No. 3023.

PABLO FLOREZ *v.* THE STATE.

1. THEFT—POSSESSION OF STOLEN PROPERTY—CHARGE OF THE COURT.—
Possession of stolen property, in order to raise a presumption of guilt,
must be recent. Remote possession of such property raises no such
presumption, and is but a circumstance, stronger or weaker in propor-
tion to its remoteness from the original taking. The first connection of
the accused in this case with the alleged stolen animal, so far as estab-
lished by the proof, was eleven months subsequent to the theft of the
same. *Held*, that, in view of such proof, the omission of the court to
instruct the jury as to the law applicable to the possession of stolen
property was error.
2. SAME—FACT CASE.—See the statement of the case for evidence *held*
insufficient to support a conviction for the theft of a mule.

APPEAL from the District Court of Duval. Tried below be-
fore the Hon. J. C. Russell.

The conviction in this case was for the theft of a mule, the
property of Juan Garza, in Duval county, Texas, on the twen-
ty-fifth day of March, 1887. A term of five years in the peni-
tentiary was the penalty assessed by the verdict.

Juan Garza was the first witness for the State. He testified
that he lived at the Los Indios ranch in Duval county, Texas.
He had never seen the defendant until his arraignment upon
this trial. The witness was the Juan Garza named in the in-
dictment as the owner of the alleged stolen mule. The witness
lost a certain mule which was taken from his "manada" (herd
of mares) about November, 1884. The said animal was, when
taken, a colt of that year's foaling. It was placed in the wit-
ness's brand in November, 1884, and disappeared soon after-
wards together with a horse and a mare. It was about four
years old when the witness next saw and recovered it from
Anastacio Perez, in San Diego, in April, 1887. The brand of
the witness was a Spanish device which resembles an inverted
T (thus ⊥) surmounted by an inverted Y (thus ⅄), the stem of
the former connecting with the latter at the point of the angle.
The brand on the mule was fresh at the time of the taking.
The said animal belonged to the witness, and was taken from

his range possession in Duval county, Texas, without his knowledge or consent. When the mule was recovered by the witness, in April, 1887, his brand was still on it but had been changed by connecting, by a circular line, the left hand stroke of the Y with the upper end of the stem. It was also in the brand of the defendant, and in the brand of Anastacio Perez, two Spanish devices similar in body, but differing in detail. When the mule was recovered by witness in April, 1887, the witness's brand, as it then appeared on the animal, and the defendant's brand, were old, and had the appearance of having been burned about the same time. Anastacio Perez's brand, as compared with the other two, was fresh. The mule was red in color when it disappeared, and was red and not brown in color when recovered. The witness never sold that mule to the defendant, nor gave him any authority whatever over it. The said mule was about one year old when it disappeared, and was about four years old when it was recovered.

Anastacio Perez, the next witness for the State, testified that he lived in San Diego, Duval county, Texas. He knew the defendant and had known Juan Garza about six months. In June or July, 1886 (witness was not certain which of the two months) he bought a red mule of the defendant. That transaction took place in the town of San Diego. The animal was then about two years and six months old. It was then in the brands that appear on it now, as described by the witness Juan Garza, except the brand of the witness. In April, 1887, Andreas Garza and Severiano Garza came to the witness's house and claimed the said mule as the property of Juan Garza. The witness thereupon sent for the defendant and told him of the claim made to the mule by Juan Garza, and asked him if he should surrender the animal to the said Garza. Defendant replied that he did not want to get into a squabble about the mule, and that, if witness would surrender it to Garza, he would repay witness the purchase money. Witness accordingly surrendered the mule to Garza, and defendant repaid him the purchase money as agreed. When the witness told the defendant about Garza claiming the animal, the defendant said that he acquired it from a man in exchange for a horse, and at the same time showed the witness a bill of sale which he said he got from that man at the time of the trade. The said bill of sale purported to convey a "josca"—dark or brown—mule, in a brand very similar to but not exactly like one of the brands on the

mule at this time. The brand thus referred to is the brand of Garza as altered. The brand as set out in the bill of sale exhibited to witness by defendant differed from the altered brand now on the mule, in that it was simply an inverted T (⊥) with a small circle at the top of the stem, and a small right hand stroke extending horizontally from the stem at the lower part of the circle. The witness bought the said mule from defendant in San Diego. It was afterward brought to the witness from defendant's ranch by Eslanislado Hinojosa, an employe of the defendant, to whom witness paid the purchase money.

The State rested.

Eslanislado Hinojosa was the first witness for the defense. He testified that he lived in Duval county, Texas, and knew the mule for the theft of which the defendant was now on trial. In June or July, 1886, the witness, by direction of the defendant, took the said mule from the defendant's ranch to San Diego and delivered it to Anastacio Perez, and received from the said Perez a sum of money, which he took back to defendant's ranch and delivered it to the defendant. Witness was in the employ of the defendant on his said ranch, in Duval county, for the nine months preceding the sale and delivery of the said mule to the said Perez, and he knew that during that entire period the defendant had no other mule on his said ranch. The said mule was "josca colorado"—dark or brown red—in color.

Jose Angel Barrera testified, for the defense, that he lived in Duval county, Texas, and was a ranch and stock owner. At this point the defendant's counsel handed the witness a bill of sale, and asked him if he could identify it. He replied that he recognized it as a bill of sale he wrote himself for the defendant, and signed as a witness, at the defendant's ranch, in Duval county, Texas, on the fifteenth day of October, 1885. The witness reached the defendant's ranch on that day, just as the defendant was concluding a trade for a young mule with the man who, in the presence of the witness, signed this bill of sale. When the trade was concluded, the defendant requested the witness to draw him up a bill of sale to cover the transaction and convey the mule. Witness thereupon drew up this instrument, which was at once signed by the man as vendor, and by the witness and Cesario Ribera as attesting witnesses. At this point the defense introduced in evidence the bill of sale, which was written in Spanish, and also the translation of the same, which reads as follows:

By the present, certify that I, the undersigned, have sold to Mr. Pablo Flores, a "josca" mule of the brand on the margin, thus [*], and for his security I sign this day. Date fifteenth of October, 1885. Sale in San Jose de Buena Vista.

                                        GREGORIO ROMERO X.

Witness—Jose Angel Barrera.

Witness—Cesario Ribera X.

[*At this point in the bill of sale appears a representation of the brand as described by the witness Perez.]

Continuing, the witness Barrera stated that, at the time of the said transaction between defendant and Romero, the mule was about thirty months old. The witness, in drawing up the bill of sale, described the animal as a "josca" or a dark or brown in color. Its natural color was what might probably be called "josca colorado," or, in English, dark or brown red, but at that time of year, with the hair long and unshed, the color appeared to be darker than it was after shedding. The color of that mule after shedding would be redder than when it was traded for by defendant, and would then be properly called a dark or brown red mule. The witness copied the brand on the mule into the bill of sale as faithfully as he could make it out, but he could not say that he traced it correctly, as some of its details may have been obscured by the long unshed hair. It was much more difficult to trace an intricate brand on an animal in the fall when the hair is long than in the spring or summer when it is short. Defendant's ranch was in Duval county, about six miles from the town of San Diego, and about twenty-five miles from Juan Garza's ranch.

Cross examined, the witness said that he transcribed the brand into the bill of sale as he made it out by tracing it on the mule. He wrote the said bill of sale in the presence of defendant and Romero, and they both accepted the brand, as incorporated into the bill of sale, as correct. Witness had never seen Romero prior to that transaction, and had never seen him since.

W. B. Austin testified, for the defense, that, at the time Juan Garza claimed the mule involved in this prosecution, he, witness, was inspector of hides and animals, in and for Duval county. He saw the said mule when defendant sold it to Anastacio Perez, and he drew up the bill of sale to cover that transaction. The said mule was brown in color, and witness so de-

scribed it in the said bill of sale.    At that time the mule had two old brands on its body, one of them being the brand of Juan Garza, which said brand was imperfect, perhaps, in some respects.    When Garza claimed the mule, the defendant told the witness that he traded for the animal, and showed the witness the bill of sale in evidence.

The motion for new trial raised the question discussed in the opinion.

No brief for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.    When missed by the owner, in November, 1884, the mule was a little over one year old; when recovered by him in April, 1887, it was four years old.    Defendant's bill of sale under which he claimed to have acquired possession of the mule is dated the fifteenth of October, 1885. Prior to this latter date there is no evidence showing any connection of any kind whatsoever on the part of the defendant with the mule.    There is no evidence showing who took the mule in 1884, eleven months before defendant was first seen in possession of it, if indeed the animal of which he acquired possession ostensibly by means of the bill of sale was the alleged stolen animal.    This possession of defendant, then, is the main circumstance upon which the prosecution relies to establish that defendant took or stole the mule eleven months prior thereto.

Possession of property, to raise a presumption of guilt, must be recent.    Remote possession of property of this character, which readily passes from one person to another, does not raise a presumption of guilt; it is but a circumstance stronger or weaker in proportion to its remoteness from the original taking. It was a question in this case as to whether the facts established a case of recent possession or not, and the question of recent possession should have been submitted to the jury under proper instructions as to the law applicable to such possession.    (Lehman v. The State, 18 Texas Ct. App., 174; Curlin v. The State, 23 Texas Ct. App., 681; Boyd v. The State, 24 Texas Ct. App., 570; Willis & Boyd v. The State, Id., 587; Romero v. The State, 25 Texas Ct. App., 394; Matlock v. The State, Id., 654; Buchanan v. The State, ante, 52.)    No instruction of such a character nor

applicable to the most important phase of the case is found in the charge of the court to the jury.

Moreover, we are of opinion that the evidence as shown by this record is insufficient to sustain the verdict and judgment.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered November 14, 1888.